```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4             Plaintiff,             )
                                      )
 5             vs.                    )   No. 13 CR 761-2
                                      )
 6   CESAR MARIN,                     )   Chicago, Illinois
                                      )   April 25, 2017
 7             Defendant.             )   10:28 A.M.

 8             TRANSCRIPT OF PROCEEDINGS - Sentencing
           BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
 9
     APPEARANCES:
10
11   For the Government:        HON. JOEL R. LEVIN
                                219 South Dearborn Street
                                Chicago, Illinois  60604
12                              BY:  MS. YASMIN NOELLE BEST

13   For the Defendant:         LAW OFFICE OF MICHAEL J. MONACO
                                140 South Dearborn Street
14                              Suite 411
                                Chicago, Illinois   60603
15                              BY:  MR. MICHAEL JOSEPH MONACO
                                     MS. MARCI L. SAHINOGLU
16
17   ALSO PRESENT:             Ms. Melissa Ray
                               United States Probation Officer
18

19
                         PAMELA S. WARREN, CSR, RPR
20                         Official Court Reporter
                         219 South Dearborn Street
21                              Room 2342
                         Chicago, Illinois   60604
22                           (312) 408-5100

23

24

25
```

1          (Proceedings had in open court.)

2               THE CLERK:  13 CR 761 dash 2, USA versus Cesar Marin.

3               MS. BEST:  Good morning, your Honor.  Yasmin Best on

4     behalf of the United States.

5               THE COURT:  Good morning, counsel.

6               MR. MONACO:  Good morning, Judge.  Michael J. Monaco

7     on behalf of Cesar Marin.

8               THE COURT:  Good morning.

9               MS. SAHINOGLU:  Good morning, your Honor.  Marci

10    Sahinoglu also on behalf of Mr. Marin.

11              THE COURT:  Good morning, counsel.

12              MS. RAY:  Good morning, your Honor.  Melissa Ray on

13    behalf of probation.

14              THE COURT:  Good morning.

15              How does the matter come before the Court?

16              MS. BEST:  Your Honor, we are here for Mr. Marin's

17    sentencing.

18              THE COURT:  Are you ready to proceed?

19              MS. BEST:  Yes, your Honor.

20              THE COURT:  Is the defense ready to proceed?

21              MR. MONACO:  Yes.

22              THE COURT:  There are a number of people coming in.

23         (Brief interruption.)

24              THE COURT:  Are they spectators related to the case or

25    merely spectators?

1       MR. MONACO:  Completely, Judge.  Yes, they are in

2  support of Mr. Marin.

3       THE COURT:  All right.  Counsel, have you had the

4  opportunity to go over the presentence investigation report

5  with your client?

6       MR. MONACO:  I have.

7       THE COURT:  Is there anything in that report that you

8  find is inaccurate or that you wish to challenge in any

9  respect?

10       MR. MONACO:  Judge, at the time the presentence

11  investigation was prepared, my client was not married.  He is

12  now --

13       THE COURT:  Could you -- just a minute, please.

14       MR. MONACO:  Certainly.

15       THE COURT:  Mr. Fulbright, please swear in the

16  witness -- the defendant.

17     (Defendant sworn.)

18       THE COURT:  All right.  Please proceed, counsel.

19       MR. MONACO:  Thank you, Judge.  Judge, there is an

20  indication in the presentence report that my client was not

21  married, and he is married.

22       THE COURT:  When did he become married?

23       MR. MONACO:  January 20th of 2017.

24       THE COURT:  All right.  Please proceed.

25       MS. SAHINOGLU:  That information was tendered to the

1    probation officer.

2          THE COURT:  All right.  To the extent that it is not

3    covered in the presentence investigation report, it will be

4    included.

5          MR. MONACO:  Thank you, Judge.

6          Judge, I don't believe we have any additions or

7    deletions.

8          THE COURT:  All right.  What is the government's

9    position regarding the presentence investigation report?

10          MS. BEST:  Your Honor, we just had a discussion.  One

11    of the issues -- the only issue I see in the PSR is the loss

12    amount.  When Mr. Marin pleaded guilty, the estimated loss

13    amount anticipated in his plea agreement was approximately $1.2

14    million.

15          Because Mr. Marin cooperated, his -- the preparation

16    of his PSR was delayed for some time.  When the government

17    tendered the -- the government subsequently tendered an amended

18    loss chart, which is attached and is the last page of the PSR.

19    That actually has a loss amount of $1.9 million.  And that is

20    not reflected in the loss amount in the PSR but is reflected as

21    the restitution amount.

22          Now that doesn't change the government's anticipated

23    guideline calculation, because at the time Mr. Marin pleaded,

24    that $1.2 million loss amount resulted in an increase of his

25    base offense level of 16.  Since that time a $1.2 million loss

1  amount would result in 14-level increase.  But the $1.9 million

2  loss amount would still result in a 16-level increase.  So I

3  think that is different than what is anticipated in the PSR,

4  but not different than what was anticipated in Mr. Marin's plea

5  agreement back in 2015.

6        THE COURT:  Well, with respect to the total offense

7  level, which is presently at 22, would these figures in any way

8  change the total offense level?

9        MS. BEST:  Yes, your Honor.  I think the government's

10 position is that the total offense level is 24.

11       THE COURT.  And the Criminal History Category from the

12 government's standpoint is I.

13       MS. BEST:  That's correct, your Honor.

14       THE COURT:  All right.  What is the defendant's

15 position regarding the total offense level?

16       MS. SAHINOGLU:  Your Honor, we would maintain that the

17 appropriate offense level is 22, as indicated in the PSR and in

18 the defendant's sentencing memorandum.

19       THE COURT:  What is the defendant's position regarding

20 the restitution figure?

21       MS. SAHINOGLU:  The restitution figure we would agree

22 with the government is 1.9.

23       THE COURT:  All right.  Very well.  We will now -- now

24 as to the guideline range, with an offense level of 22, it

25 would be 41 months to 51 months.

1          With a total offense level of 24, from the

2     government's standpoint, what would be the guideline range?

3          MS. BEST:  It would be 51 to 63, your Honor.

4          THE COURT:  All right.  And so the defendant may argue

5     with respect to a fair and appropriate sentence with special

6     emphasis on all of the 3553 factors, which are very adequately

7     developed within the presentence investigation report.  But

8     they are very important, and defense counsel may argue.

9          MR. MONACO:  Thank you, Judge.

10         Judge, the first thing I would like to point out to

11    you with respect to the 3553 factors is a fact that it is very

12    relevant because now Mr. Marin is 34 years old.  When he got

13    involved in this scheme, he was only 25.  As you know, as a

14    Judge for many, many years, there is a significant difference

15    in a person's moral and mental development as they get older.

16    At least you would hope that's the case.

17         Reviewing this case in total, Judge, the scheme

18    started in 2004 and ended in 2012.  Mr. Marin, his involvement

19    occurred in 2008, so he was not at the inception of the scheme.

20         Additionally, Judge, his involvement in this case

21    where you have 52 separate mortgages that were fraudulent, his

22    involvement was only with eight.

23         When you look at Mr. Marin's life in the letters and

24    you look at our, as I know you have, our position --

25         THE COURT:  I have it before me as well.

1          MR. MONACO:  -- our sentencing memorandum, you can see

2     that this is a young man who was raised in a very good family

3     and who was not born in this country and grew up in an area

4     that is not well known for producing many college graduates.

5     But despite that, he went on and got his degree from Concordia.

6     Prior to going to Concordia, he went to high school at Quigley

7     with the idea of potentially serving the Catholic church as a

8     priest.

9          If you excise out those four years, you have before

10    you a picture of a very well adjusted, hard working dignified,

11    and decent man.  He has had extensive involvements in Catholic

12    Charities well before, Judge, he was indicted in this case.

13    This is not a matter where all of a sudden Mr. Marin gets in

14    trouble and then tries to present the best possible face to the

15    Court as way of compensating for his wrongdoing.  His goodness

16    and his charitable involvement preceded, well preceded his

17    indictment.

18         Moreover, Judge, and I think it is very important to

19    take a look at this, after he got indicted, he did a number of

20    things.  First of all, he cooperated with the government.  He

21    proffered.  He went before the grand jury under oath.  And you

22    had the opportunity to observe him for several hours as he

23    testified on behalf of the government.

24         But he didn't stay at home, he didn't remain

25    unemployed, he didn't wallow in self pity, he didn't engage in

1    destructive behavior, he did something very good, which is he

2    got a job with Perillo BMW.  And you have a letter from

3    Mr. Perillo that was sent to this Court.

4         He has worked his way up the ranks of that particular

5    organization, and he has been a major asset to that

6    corporation.  So instead of saying, oh, woe is me and life is

7    terrible and I'm -- you know, I can't get out of this, he goes

8    in the opposite direction.

9         The consequences for Mr. Marin are very severe beyond

10   the sentence of this Court.  He has a lot of shame for what he

11   did because the people that he is surrounded with, as the

12   letters indicate, are not engaged in criminality.  They are

13   very good hard working productive people who benefit our

14   country, benefit our society.  Those are the people that he

15   normally hangs out with and spends time with and is involved

16   with.  He has opened his heart up to these people, and he has

17   stated to them what he did and how bad he feels about it.  And

18   I think that's rather -- you know, detailed rather well in

19   his -- in the various letters that were submitted on his

20   behalf.

21        What differs though, as I stated before for Mr. Marin,

22   is that unlike all of the other people that were sentenced in

23   this case, he has a major collateral issue.  He is not a

24   citizen of the United States; he is a permanent resident.  His

25   parents are citizens.  His brothers are citizens.  His wife is

1    a citizen.  And virtually all of his family members and friends

2    are citizens of the United States.

3        It is a forgone conclusion that after this Court

4    pronounces judgment in this case, a sentence and judgment, that

5    he is going to be subject to deportation.  It doesn't mean that

6    he is going to be deported, but the United States Government

7    you can be sure is going to initiate deportation proceedings

8    against him.

9        He has taken the step -- and you have an affidavit

10   from Mr. Resnick, who is his immigration lawyer, explaining to

11   you what the consequences of a sentence would be for Mr. Marin.

12   You have sentenced, I believe, everybody in this case before

13   Mr. Marin.

14       Mr. Pettis, who received one year and one day is the

15   person that we believe is the person closest to him in terms of

16   his involvement in the scheme.  Now I say closest to him, but I

17   don't mean exactly like him.  Mr. Pettis's involvement is for a

18   greater amount of money.  He has a longer -- his participation

19   in the scheme is far longer.  His activities on behalf of

20   Mr. Austin are far more involved.  This Court saw that

21   Mr. Pettis should get a sentence of one year and one day.

22       Ms. Paek, this Court sentenced to one day.

23       Now as Mr. Resnick points out, Judge, any sentence

24   below a year will take this out of the category of an

25   aggravated felony, which is significant.  But more significant

1    than that, Judge, if this Court sentences Mr. Marin to any time

2    whatsoever, that means that when deportation proceedings begin,

3    he will be taken into custody, taken away from his family, from

4    his work, from his social network, not as an illegal alien but

5    as a legal alien, and placed in an ICE detention camp with

6    people, Judge, that he doesn't know nor people that he would

7    ever willfully choose to be involved with.

8            It is no mystery to anybody that many of the people

9    that will be in those ICE detention camps are people who are

10   active gang members and members of cartels who are

11   locked -- who are involved in the illegal distribution of

12   narcotics and who are also accountable for a significant amount

13   of violence that occurs in our country.

14           Mr. Marin, despite growing up in a rough neighborhood,

15   has never even had an arrest for a battery.  There is nothing

16   in his background that indicates he was ever involved in the

17   use or sale of narcotics, the use or sale of weapons or any

18   type of gang membership or membership in any illegal

19   activities.

20           Opportunities, Judge, frankly in that neighborhood at

21   that time, and still to this day, are more than open to anybody

22   who wants to participate.  But because of his family structure,

23   his parents are here, his family in total is here, amongst many

24   other people, he chose a better path.  He went to Quigley, and

25   he went to Concordia, and he has his degree.  And other than

1    the four years, Judge, where he was involved with Mr. Austin,

2    he's a model member of society.

3         It is our position, Judge, that if this Court grants

4    Mr. Marin probation, what will happen is this:  He will meet

5    with probation, and tomorrow, Judge, just like the day before,

6    yesterday, and the preceding three years, he will go to work

7    and he will function in society as a lawful member of society.

8         Additionally, Judge, I think it is also important to

9    note that not at one time while he was on pretrial detention

10   did he ever violate his pretrial conditions.

11        THE COURT:  How long has he been on pretrial release?

12        MR. MONACO:  Since October of 2013, three and a half

13   years.  And he got his job with Mr. Perillo in April of '14.

14   So he has been with Mr. Perillo for three years.  His record

15   has been unblemished.

16        Judge, I think in this case, because of the shame that

17   Mr. Marin has experienced, and you're going to have an

18   opportunity to hear from him, you don't really have an issue

19   here where you're going to need specific deterrence.  I don't

20   think Mr. Marin will ever, ever break the law again or ever,

21   frankly, be involved with anybody who might appear to be

22   involved in illegal activities.

23        It is unfortunate that a man with his level of

24   education and his familial support got involved with folks that

25   were not on the level.  And I'm not trying to make an excuse

for Mr. Marin, but I will say this much, having handled several
of these cases, and I know your Honor has had the opportunity
to hear many cases involving mortgage fraud, conditions were
out in the business world that opened up the opportunity for
people to make easy and fast money. And that is one of the
greatest lures of bad behavior, easy money, because you well
know that there is no easy way to make money. However, many
people come before this Court and are in this building who
otherwise are very good people, but who get ensnared in what I
would call greed, and that's what it is.

But over the course of four years, Judge, he only
profited just under $120,000. That's it. And that breaks down
over four years to $30,000 a year. He is going to pay a very
high price.

And I think it is also important for this Court to
note that after today, whether you give him probation or
whether you give him jail time, Judge, he will never be allowed
to become an American citizen. That's another consequence of
this Court's judgment today, no matter what, because this is a
crime of moral turpitude. And as much as he might want to be
involved in our civic life, he's going to have limitations. He
also will have the limitation on various constitutional rights,
one of which, maybe not significant to him, is his ability to
possess a firearm or even have a firearm of his own for
purposes of home protection.

1    So his status here will forever, till the day he dies,

2  be different from most people's as a consequence of this case.

3  And he will not share the opportunity with his family and

4  friends to go to the voting booth and to exercise the

5  franchise.

6    So, Judge, I think in this particular case, despite

7  where we're starting out at on the guidelines, this is a Class

8  C felony.  He is probationable.  And I believe, Judge, that

9  when you take into account his PSR and our memo and all those

10  letters, that the only just sentence for Mr. Marin would be a

11  term of probation.

12    THE COURT:  The government may respond.

13    MS. BEST:  Your Honor, the government is moving

14  pursuant to 5K1.1 for a third off reduction for Mr. Marin.  And

15  I start out with that because though there is some difference

16  in terms of what the applicable guideline range is, the

17  government has committed to a motion for Mr. Marin for a third

18  off of the low end of the range.

19    As Mr. Monaco just stated, Mr. Marin did cooperate

20  with the government, and your Honor saw him.  Not only did he

21  come in and proffer and prepare to testify, he in fact

22  testified at length at the trial of co-defendant Keith Austin.

23  And that testimony was incredibly important, even though

24  Mr. Austin wound up pleading guilty rather than proceeding to

25  verdict, because it explained parts of how this scheme worked

1    and what Mr. Marin's role was and what Mr. Austin's role was.

2           I don't want to belabor --

3           THE COURT:  Well, just -- just to make the record on

4    the point, Mr. Austin did enter a plea of guilty, but after the

5    trial had progressed a number of days.

6           Is that correct?

7           MS. BEST:  We were in the second week of trial, your

8    Honor, and he pleaded after approximately 20 witnesses had

9    testified.

10          THE COURT:  That is also my recollection of the

11   matter.

12          Please proceed.

13          MS. BEST:  As I was saying, I don't want to belabor

14   because I know your Honor sat through the trial and has now

15   sentenced all nine of Mr. Marin's co-defendants.  I know your

16   Honor knows the contours of this long-term mortgage fraud

17   scheme that resulted in millions of dollars of loss to a number

18   of different victims, both financial institutions as well as

19   individuals, people whose personal information was compromised

20   during the course of the scheme.  People whose credit was

21   ruined -- credit were ruined because of their involvement with

22   this scheme as straw purchasers.

23          And Mr. Marin had a limited role, as Mr. Monaco just

24   stated, but he did have an important role because Mr. Marin was

25   a licensed loan officer.  He was an insider in the industry

while this was going on.  And what that meant is that Mr. Marin

had a fiduciary duty really to not engage in these sorts of

transactions.  He knew that providing false information was not

only immoral, but illegal.  And he engaged in that conduct

numerous times.

And while Mr. Marin did cooperate with the government,

I think it is important to point out that he also, before

cooperating with the government, engaged in the obstruction of

justice.  Because when he was served with a grand jury

subpoena, his response was to reach out to Keith Austin.  And

together, along with Mr. Pettis, they prepared and submitted

false documents to the government in response to that subpoena

in order to conceal their fraud.

That said, your Honor, in terms of reviewing the

3553(a) factors, obviously there is significant mitigating

information included in the PSR and in the defense's sentencing

memorandum.  And this is a hard case because Mr. Marin is sort

of a unique person in that he is facing really tremendous

potential collateral consequences, but also that Mr. Marin

really does have what looks to be an entirely squeaky clean

background.  He has one ticket for driving with a suspended

license or suspended tags when he was 20 years old, and that is

it.  He doesn't have a criminal history.

It is clear from the voluminous letters that were

submitted that he has a tremendous amount of familial and

1   community support.  And that cuts both ways.  Because this

2   really does seem to be an aberration of Mr. Marin's background.

3   And it is hard to understand quite how he came to the point of

4   engaging in this fraud.  But on the flipside, he is not like a

5   lot of the defendants that we see in this building in that he

6   does have a tremendous amount of familial support.  And he

7   didn't have to engage in this sort of criminal activity, but he

8   chose to do so, and he did so not just once but over a period

9   of time.  That is why the government has asked for a sentence

10  of imprisonment at the low -- a third off of the low end of the

11  range.

12          The last thing, and I know that's discussed in the

13  defense's sentencing memorandum, is the need to avoid

14  unwarranted sentencing disparities, which is one of the 3553(a)

15  factors.  There were six cooperators in this case.  The

16  previous five have been sentenced to a wide range of terms of

17  imprisonment.

18          Steve Gawlik was sentenced to, I believe, 24 months in

19  prison.

20          Michael Thill received 18 months.

21          Mr. Pettis and Mr. Brown both received a year and a

22  Dave.

23          Constance Paek received a sentence of one day, though

24  her situation was unusual in that she had a newborn child at

25  home and had, I believe, four children under the age of eight.

1  And so she was in sort of a different position than the other

2  co-defendants.

3       But your Honor has sentenced people to terms of

4  incarceration recognizing that this is a serious offense.  It

5  was long term, it was ongoing, and it really harmed a number of

6  people in a number of different ways.  And but for the

7  tremendous collateral consequences regarding Mr. Marin's

8  immigration status, I think we would be having a different

9  conversation altogether.

10       I understand where the offense is coming from in terms

11  of asking for a term of probation, but considering the long-

12  term decision to engage in this fraud scheme, the really

13  staggering losses that were suffered by the victims, and

14  defendant's willingness not only to engage in that scheme, but

15  then to engage in the obstruction of justice, I do think a

16  sentence a third off the low end of the range is appropriate

17  for Mr. Marin.

18       THE COURT:  All right.  Mr. Marin, you have the right

19  to make a statement to the Court before the sentence is

20  imposed.  You also have the right to remain silent, which means

21  to say nothing.  If you do wish to speak, this is your

22  opportunity to do so.

23       THE DEFENDANT:  Thank you.

24       Good morning, your Honor.  I still clearly remember

25  the day my mother called to tell me that two FBI agents were at

1    the house looking for me.  I remember speaking with them to ask

2    about my involvement in mortgage loans I had previously

3    submitted.

4         I remember hearing from an old friend -- I remember

5    hearing from an old friend --

6         (Brief interruption.)

7         THE DEFENDANT:  I remember hearing from an old friend

8    that my name was part of an article referencing mortgage fraud.

9    These memories have forever -- these memories and my

10   involvement in this case forever changed my life.

11        I am deeply sorry for my -- I am deeply sorry for my

12   dishonest and stupid actions in the past that have brought me

13   here before you today, your Honor.  The immaturity and my

14   thought process at the time allowed me to lose focus in myself

15   making money a priority and greed -- making money a priority

16   and greed the decisionmaker.

17        I accept full responsibility for my actions and

18   apologize to the lenders and others affected by my actions.  In

19   March of 2014 I went to confession at my local parish, and that

20   day I promised to not involve myself in any wrongdoing and

21   practice my faith by serving others.  Catholic Charities has

22   been a big part of my promise of serving those and helping

23   those in need.

24        I am disgusted, ashamed, sad, embarrassed, and

25   disappointed in myself for these actions.  All the sweat and

tears my family -- all the sweat and tears from the hard work

my family and friends, teachers, coaches, priests, mentors who

always believed in me, were thrown away the day I decided to

participate in this scheme and not take responsibility right

away thinking there was an easy way out.  When faced with the

allegations, I panicked and tried to find an easy way out,

which was wrong, and I'm sorry, and I accept full

responsibility for my actions.

        As a result of my actions, my career in banking has

ended forever, and my reputation in the banking industry has

been tarnished for the rest of my life.  I have been barred

from ever working in a Federal Deposit Insurance Corporation

and have had my mortgage license revoked.

        My personal life has also suffered the consequences of

my actions.  I buried myself financially, dishonored my family

name, and betrayed the trust of those around me.  It also

affected my marriage at the time, which led to a divorce.

        My family, new wife, friends, and colleagues have been

a tremendous part of my life, and the reason why I stand here

before you on my two feet.  I am blessed to have them.  Knowing

that I have let them down brings me sadness, brings sadness,

tears, and shame.  That is why I have been working hard to

rebuild my life emotionally, physically, and spiritually.  I am

trying to teach those younger relatives of mine to make the

right choices in life because the consequences are far worse

1    than what anyone can imagine.

2           Thank you.

3           THE COURT:  There is no question that you show genuine

4    remorse for your unlawful conduct.  I don't know what more one

5    can do to show regret and remorse for prior bad conduct than

6    what you have done.

7           You have demonstrated, at least going back to October

8    of 2013, that you can follow the rules and regulations.  There

9    was a release order entered in this case, and you are now

10   appearing before the Court almost four years later, and there

11   is no negative report regarding your conduct over those four

12   years.

13          After your indictment and when represented by counsel,

14   you made a proffer to the government and gave comprehensive and

15   truthful information to the government, which was extremely

16   important with respect to the prosecution of the many

17   co-defendants in this case.  Your cooperation was of great

18   value to the government.  And you testified during the course

19   of the trial of the various co-defendants, and the Court

20   believes that your testimony was truthful.  You gave complete

21   and truthful information, which was very important in terms of

22   the trial itself.

23          Mr. Austin, the most culpable of the defendants,

24   eventually entered a plea of guilty in this case.  And his

25   relationship to the other co-defendants is remarkable.  He was

1    an influential, powerful individual in terms of dealing with

2    the various co-defendants, and you were one of them.

3         This is not to excuse your bad behavior, your unlawful

4    conduct, which you recognize here this morning and for which

5    you have shown genuine remorse.  But the Court is well aware of

6    how Mr. Austin controlled essentially the activities of the

7    various co-defendants in this case.

8         You have since been married.  You have no prior

9    arrests and have been involved in charitable activities.  The

10   various letters submitted by your two attorneys attest to your

11   character and how you have acted even before the events of this

12   case and how you have since acted.

13        The activities go back to 2004 and extended to 2012.

14   But as Mr. Monaco has underscored, your principal involvement

15   was in 2008.  We are now in 2017 sentencing you.  This

16   indictment was brought in the year 2013.  So the sentencing in

17   this case has the odor of staleness to it.  The Court should

18   have sentenced you earlier.  There were numerous requests for

19   extensions, which the Court granted.  But what it did provide

20   was yet another opportunity for you to demonstrate how you can

21   follow the rules and the regulations.

22        The government's recommendation here that the sentence

23   be one third off the low end of the appropriate guideline range

24   is a fair recommendation.  The guideline range would be 51 to

25   63 months, with a total offense level of 24.  And as I have

1    said, it is a fair recommendation.  The government is not

2    making this up off the cuff or willy nilly.  The government

3    knows full well the extent of the activities of the various

4    defendants in this case.  And the amount of restitution is $1.9

5    million, which the Court has ordered various co-defendants to

6    pay jointly and severally.  I have looked at your financial

7    statement contained in the presentence investigation report.

8    You're a man of very limited means.

9         I have spent a great deal of time considering the

10   Section 3553 factors in this case.  I am well aware of why the

11   Court imposed the various sentences regarding the

12   co-defendants.  Each defendant who comes before the Court must

13   be treated as an individual.  The Court is not ignoring the

14   sentences imposed by the others.  But you are indeed unique

15   before the Court being the last to be sentenced in the case.

16        I, of course, am aware of what your attorneys have

17   characterized as the collateral consequences in this case.  But

18   you yourself are responsible for them, which you readily admit

19   today.

20        It would be, as I see it, counterproductive to impose

21   a sentence that would place you behind bars.  You have already

22   demonstrated that you are well on the road to complete

23   rehabilitation.  You have shown true remorse for your conduct

24   and have acknowledged in detail how wrong you were to do what

25   you did.  There would be no significant advantage from the

1  prosecutorial standpoint to place you behind bars at this

2  juncture.  With respect to collateral consequences, that is

3  something that you must deal with.

4       But it is the judgment of the Court that you are

5  placed on probation for a period of one year, which does not

6  include the imposition of any jail time.  And you are to, as a

7  condition of the probation, pay $1.9 million in restitution

8  jointly and severally.  No fine is imposed because you do not

9  have the financial ability to pay a fine.  You must pay the

10  mandatory special assessment of $200 with respect to your

11  convictions for Count Six and Count Eleven of the indictment.

12  And the probation is to be served concurrently subject to the

13  standard rules and regulations of probation.

14       I want to underscore how important your testimony in

15  this case was.  And I understand it is not easy for you to take

16  the witness stand and tell -- testify truthfully as you did.

17  And your cooperation came very early on in the case.  It was

18  not a cooperation of mere convenience, it indicated to the

19  Court that in the very beginning you recognized that what you

20  had done was wrong and you were ready to pay the unfortunate

21  consequences of it.

22       You are not a citizen of the United States, and I have

23  not ignored Mr. Monaco's comments regarding a citizenship in

24  this matter.

25       And so for all of these reasons, you are sentenced to

1   one year of probation concurrently on Count Six and Eleven.

2           I want again to say that the government's

3   recommendation was -- is fair and appropriate, except that the

4   Court does not agree with it.  The passage of time here, once

5   again, is very important.  The last indictable action of the

6   defendant occurred some time in 2008.  It is 2017 now, and,

7   once again, at the risk of being overly, overly repetitious,

8   the defendant has demonstrated, since at least October of 2013,

9   that he can follow the rules and regulations.  Putting him

10  behind bars would be an unnecessary reminder.  He has already

11  shown what he can do.  And he also understands what he should

12  not do.

13          I have also given substantial weight to the various

14  letters that have been submitted in support of Mr. Marin.  They

15  too are important because what it shows is that there are a

16  number of people that are willing to continue their

17  relationship with Mr. Marin and to help him along the way to

18  the extent that further rehabilitation could conceivably be

19  necessary.  And in a larger sense, they may serve as watchdogs,

20  so to speak, to remind Mr. Marin how important their roles were

21  in this matter and that he would do nothing to disappoint his

22  friends and family and relationship in the future.

23          So the Court is confident that one year probation is a

24  fair and appropriate sentence, and it is not likely that he

25  would violate the terms and conditions of the probation.

1    Obviously if he were to do so, there would be the potential to

2    place Mr. Marin behind bars.  So that is the judgment of the

3    Court.

4        Now I have said the standard conditions of probation

5    from the pretrial release probation officer's position.  Are

6    there any special conditions that you would recommend in this

7    case?  I'm looking at the conditions of supervised release.  To

8    a certain extent they mirror probation's conditions, and so the

9    standard conditions of probation are imposed.

10       One in particular that should be imposed is that the

11   defendant shall provide a probation officer with access to any

12   requested financial information necessary to monitor compliance

13   with the conditions of super- -- as it were here, not

14   supervised release, but probation because I have imposed

15   restitution jointly and severally against the defendant.

16       And further that the defendant shall advise the

17   probation officer of any material change in his economic

18   circumstances that might affect his ability to pay restitution.

19       And also that the defendant shall provide

20   documentation to the IRS and pay taxes as required by the law.

21       And further that the defendant shall pay any financial

22   penalty that is imposed by this judgment that remains unpaid at

23   the commencement of the term of probation.

24       I am not imposing a fine in this case because the

25   defendant does not have the ability to pay one.

1          He is not ordered to pay the cost of probation.

2          From the probation department's position, is there

3   anything further that you would suggest or recommend?

4          MS. RAY:  Your Honor, we would just ask that if

5   Mr. Marin wishes to travel, he notify us and that he remain

6   within the Northern District of Illinois, unless granted

7   permission.

8          THE COURT:  It is so ordered, and that additional

9   condition is imposed.

10          MS. BEST:  Your Honor, if I could, I think all the

11   conditions that are laid out here for supervised release would

12   be appropriate for probation.

13          The two I just wanted to highlight are Special

14   Condition Number 3, if Mr. Martin is unemployed for 60 days he

15   shall do 20 hours of community service per week.

16          And then Special --

17          THE COURT:  Is there any objection to 3, Mr. Monaco?

18          MR. MONACO:  None.

19          THE COURT:  Three then is imposed.  It is on page 5.

20          MS. BEST:  And then, your Honor, Special Condition

21   Number 5, that the defendant shall not incur new credit charges

22   or open additional lines of credit without approval from

23   probation.

24          THE COURT:  Is there any objection?

25          MR. MONACO:  None.

```
 1          THE COURT:  That too, 5, is imposed, and it is spelled
 2    out in great detail on page 5.
 3          MS. RAY:  One more, your Honor.  I believe it is on
 4    page 20.  It is Condition Number 16.  I would just modify to
 5    add that he shall allow the probation officer to visit at home
 6    or other reasonable location.
 7          THE COURT:  Is there any objection?
 8          MR. MONACO:  None.
 9          THE COURT:  All right.  It is so ordered.
10          MS. RAY:  Okay.
11          THE COURT:  All right.  Mr. Marin, you have the right
12    to appeal this judgment of conviction which is being entered
13    against you.  Any notice of appeal must be filed in the Clerk's
14    Office within 14 days.
15          If you cannot afford an attorney for purposes of the
16    appeal, one will be appointed to represent you.  You could file
17    that notice of appeal yourself or direct either of your two
18    attorneys to file it on your behalf, but it must be filed in
19    the Clerk's Office within 14 days.
20          Do you understand what I have just said?
21          THE DEFENDANT:  Yes.
22          THE COURT:  Do you wish to say anything further?
23          THE DEFENDANT:  No, your Honor.
24          THE COURT:  Were there any other counts against the
25    defendant?
```

1          MS. BEST:  Your Honor, one moment.

2          Yes, Counts Four and Five.  He pleaded guilty to

3     Counts Six and Eleven, so the government moves to dismiss

4     Counts Four and Five.

5          THE COURT:  That was part of the agreement?

6          MS. BEST:  Yes, your Honor.

7          THE COURT:  Is that right, Mr. Monaco?

8          MR. MONACO:  That's correct.

9          THE COURT:  All right.  Those two counts are

10    dismissed.  It is so ordered.

11         There is no interest imposed on the $1.9 million in

12    restitution.

13         Thank you.

14         MS. BEST:  Thank you, your Honor.

15        (Which concluded the proceedings:)

16                         CERTIFICATE

17         I HEREBY CERTIFY that the foregoing is a true, correct

18    and complete transcript of the proceedings had at the hearing

19    of the aforementioned cause on the day and date hereof.

20

21    /s/Pamela S. Warren                May 1, 2017
      Official Court Reporter                 Date
22    United States District Court
      Northern District of Illinois
23    Eastern Division

24

25